FILED
APR 28 1999
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELINDA COSBY, et al.,

    Plaintiffs,

vs.

CITY OF OAKLAND, et al.,

    Defendants.

No. C97-0267 MHP

**MEMORANDUM AND ORDER**

    Plaintiff Melinda Cosby, widow of Nathan Roy Cosby, individually and in her capacity as Administratrix of the Estate of her deceased husband, along with Donita Drumgoole Cosby, Nathan Cosby's daughter, and Orlean Cosby, Nathan Cosby's mother, allege six causes of action against defendants the City of Oakland ("Oakland"), Craig Kocian, Joseph Samuels and Eric Belker arising from the shooting death of Nathan Cosby by Oakland Police Officer Belker. Now before the court is defendants motion for summary judgment with regard to the First, Third, Fourth, Fifth and Sixth Causes of Action.[1] A hearing on this motion was held April 26, 1999.

    Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

/////

/////

/////

BACKGROUND[2]

At seven-thirty on the morning of January 6, 1994, the Oakland Police Department's Entry Team went to 9950 Longfellow Avenue in Oakland to serve a search warrant on Melinda Cosby, a suspect in a credit card fraud case. The Entry Team surrounded the home and several officers approached the front door while others stationed themselves on the perimeter of the property. Officer Eric Belker was assigned to get as close as he could to the northeast corner of the rear of 9950 Longfellow. Once at this location, Officer Belker took a position of concealment behind a fence with the purpose of monitoring the rear of the residence. Officer Belker could see the rear of the residence from this position. See Belker Dec. at 3. Officer Belker wore dark clothing and a knit cap with no visible insignia of law enforcement. See Pl's Exh. B. He was equipped with a radio to enable him to communicate with other officers, including a mechanism clipped near his shoulder to transmit and receive information.

Prior to attempting entry, the Entry Team executed a "knock and notice." From his position at the perimeter, Officer Belker twice heard Officer Rogers loudly announcing the presence of the Oakland Police with a search warrant and demanding entry. The Entry Team got no response from inside the residence, thus they proceeded to enter the home by force. Officer Belker believes he heard the sounds of the Entry Team breaking down the front door. While he could still hear the sounds of the officers attempting to gain entry, Officer Belker observed a man at a sliding window in the rear of 9950 Longfellow. The man was later determined to be Nathan Roy Cosby ("Cosby"). When Cosby opened the window, Officer Belker observed a gun in his hand. The weapon was in the same hand as the one Cosby used to open the window. See Belker Dep. at 142. Officer Belker stated that once he saw Cosby's weapon, he moved out of his position of concealment, drew his weapon and took aim on Cosby.

The parties vigorously dispute the events of the next few seconds. Officer Belker believes that Cosby made direct eye contact with him, and upon doing so, made a low audible sound and brought his weapon up, pointing it at Officer Belker. Melinda Cosby testified that early in the morning, the glare from the sunlight is so blinding that it would have been

impossible for Cosby to have seen Belker from his window at the time he was shot. See M. Cosby Dec. at 2. In Officer Belker's declaration, he stated that when Cosby aimed the gun at him, the officer fired in self-protection, and that at the time he fired, Cosby's gun was pointed at him. See Belker Dec. at ¶ 17. He also stated that just in the instant he shot at Cosby, Cosby turned his head to the left. See Belker Dec. at ¶ 18.

In his deposition, however, Officer Belker stated that he fired to protect the Entry Team that he believed was in the residence, not in self-defense as he now claims in his declaration. See Belker Dec. at ¶ 17. Officer Belker testified that he never actually saw any members of the Entry Team from his vantage point by the time he took aim and fired at Cosby. See Belker Dep. at 169. He also stated that when he fired his weapon, the right side of Cosby's head was facing him. See id. at 164.

Officer Belker testified that he did not believe he could have used his radio to warn the Entry Team or shouted a verbal warning to Cosby without compromising his aim. At the time Officer Belker fired upon Cosby, he estimates that he was approximately thirty to thirty-five feet from the residence. Lansing Lee, a criminalist with the Oakland Police Department, testified that bullets of the type used by Officer Belker travel at approximately 900 feet per second from the muzzle. See Lee Dep. at 22. Cosby died of a single gunshot wound to the back right side of his head.

Sergeant Tolleson, the leader of the Entry Team, testified that the Team was in the hallway of the residence when they heard the shot fired. All members of the entry team were armed; in addition to sidearms, one officer had a submachine gun and one carried a shotgun. After hearing the gunshot, the Entry Team members performed a "slow search" of the premises and ultimately found the mortally wounded Cosby with a handgun on the floor near his right hand. Cosby was legally in possession of the gun and was its registered owner.

Cosby's neighbor heard nothing unusual until she heard the initial gunshot. See Gill Dec. at 2. Subsequent gunshots were fired when officers shot the Cosbys' two dogs with a shotgun. See Guerrero Dep. at 47-48.

3

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations, see Anderson, 477 U.S. at 249, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. See T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.    Section 1983 Claim

Defendants make this motion for summary judgment alleging that there is no genuine issue of material fact and that there is an absence of evidence supporting the plaintiff's theory of the case. Plaintiffs respond that Officer Belker acted unreasonably when he shot and killed Cosby. Specifically plaintiffs raise the following arguments: (1) Officer Belker's inconsistent statements raise sufficient disputes of material fact; (2) Officer Belker was never in imminent danger, nor were the officers who were entering the residence; (3) the government interest here was not outweighed by Cosby's interest; (4) the use of deadly force was unreasonable here where Officer Belker could have easily avoided shooting Cosby by radioing other officers or shouting a warning to Cosby; and neither the city nor Officer Belker is entitled to qualified immunity.

A.     Reasonableness

Whenever a police officer prevents an individual from freely walking away from an encounter with law enforcement, the officer has seized that person. See Tennessee v. Garner, 471 U.S. 1, 7 (1984). While lesser degrees of interference may not always constitute a seizure, Garner has left no doubt that apprehension through the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. Id. Determining whether the force used to effect a particular seizure is reasonable requires a careful balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (citations omitted). Because the reasonableness test is incapable of precise definition or mechanical application, its proper treatment requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight. See id.; see also Garner, 471 U.S. at 3 (use of deadly force reasonable only if officer has probable cause to believe that the suspect poses significant threat of death or serious bodily injury to officers or others). These factors are not exclusive, however, and the totality of the particular circumstances of each case must be considered. See Fikes v. Cleghorn, 47 F.3d 1011, 1014 (9th Cir. 1995) (jury instruction complies with Graham by focusing on totality of circumstances); see also Forrester v. City of San Diego, 25 F.3d 804, 806 n.2 (9th Cir. 1994), cert. denied, 513 U.S. 1152 (1995).

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. See Graham, 490 U.S. at 397. Reasonableness here "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. Police officers are not required to use the least intrusive degree of force possible, they are required only to act within a reasonable range of conduct. See Forrester, 25 F.3d at 806-07 (use of minimal and controlled

5

force in manner designed to limit injuries reasonable); see also Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment), cert. denied, 515 U.S. 1159 (1995). Nonetheless, the court looks to all the circumstances of the particular seizure to determine whether the officer acted reasonably when applying deadly force.

Reasonableness is generally a question for the jury, however, on a summary judgment motion, the court may engage in a reasonableness inquiry viewing the evidence in the light most favorable to the plaintiffs. See T.W. Serv., 809 F.2d at 631. Plaintiffs here contend there is a genuine issue as to material facts surrounding Officer Belker's shooting of Cosby that would preclude the granting of summary judgment. "Material" facts are those facts relevant to an element of the claim or a defense and whose existence might affect the outcome of the litigation. See id. at 630. Thus, the court determines the materiality of a fact by examining the substantive law governing the individual claim. See id.

Several factual discrepancies in this case, outlined in detail below, lead the court to conclude that summary judgment here is inappropriate.

### 1. Inconsistencies in Officer Belker's Account

Plaintiffs offer evidence of inconsistencies in key aspects of Officer Belker's account of the shooting, specifically the reason the officer fired upon Cosby. In his deposition, Officer Belker claims that he fired his weapon to protect the officers who had entered the residence. He describes the moments just before the shooting:

> At that point, [Cosby] begins to shift his weight onto his left foot; his head begins to go down in a westerly sort of direction, and simultaneously, the weapon--which it was in his right hand--comes up, and it is pointing in my direction. And then as he goes farther--his head is now behind the two paned glass . . . and as he continues to go down, the weapon, after being trained on me--he's now looking back to the left at the team who's coming in, and the gun begins to point at the entry team or in that direction.
> Q:  Okay. Is that the point at which you discharged your weapon?
> A:  Yes.

Belker Dep. at 162-63. Plaintiffs' attorney went on to inquire: "Q: Let me ask you this, sir. When you discharged your weapon, you discharged--you did not discharge it for the purpose of

6

protecting yourself from being shot by Mr. Cosby; is that right?" whereupon Officer Belker responded, "Yes, that's correct." Belker Dep. at 169.

In contrast, Officer Belker states in his declaration that he fired upon Cosby when Cosby pointed his gun at Officer Belker, not because he feared for the lives of his fellow officers in the house:

> The man at the window initially looked to his left and then made direct eye contact with me. I was approximately 30 to 35 feet away from him. After making eye contact with me, he made an audible sound and brought the weapon, which was in his right hand, up and pointed it at me. At this point, I fired my weapon at the man in the window. At the time I pulled the trigger, his gun was pointed at me.

Belker Dec. at ¶ 17.

In cases such as this, where the officer is the only surviving witness, the court must engage in a careful examination of all the evidence to determine whether the officer's account is "internally consistent." See Scott, 39 F.3d at 915. Officer Belker's two alternative reasons for using deadly force cut to the heart of the reasonableness inquiry. Deadly force is reasonable only when "the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others . . . ." Garner, 471 U.S. at 11. While either of Officer Belker's stated reasons for shooting Cosby may potentially support a finding of reasonableness if a jury found one or the other credible, the existence of two contradictory statements from the same witness creates a genuine issue of material fact. When the moving party's own statements conflict on the key issue, the court may reasonably conclude that there is a genuine dispute as to a material fact. The court does not find Officer Belker's statements "internally consistent," thus summary judgment is inappropriate.

    2. <u>Imminent danger to Officer Belker and other officers</u>

      a. <u>The Gunshot Wound</u>

While Officer Belker's versions of the event offer explanations for the placement of the gunshot wound, the evidence of the entry wound to the back of Cosby's head, viewed in light most favorable to the plaintiffs, could lead the trier of fact to conclude that Officer Belker was not in immediate danger. See Pl.'s Exh. A. Plaintiffs argue that the placement of the wound

indicates that Cosby did not even see the officer. This is a rational inference, thus this fact creates a genuine issue of the material fact surrounding Cosby's death.

In addition, the testimony of Lee, the Oakland Police Department criminalist, supports a conclusion contrary to Officer Belker's statement. Lee testified that generally bullets of the type used in Cosby's shooting travel at approximately 900 feet per second. Officer Belker estimated that he was thirty to thirty-five feet from Cosby when he fired. Consequently, a bullet fired at 900 feet per second would have made virtually instant contact with Cosby, casting doubt on Officer Belker's statement that Cosby turned his head the instant the officer fired. See Lee Dep. at 22.

    b.  The Location of the Entry Team

Officer Belker now testifies that he fired to protect other officers, yet plaintiffs have produced evidence that Officer Belker had no actual knowledge of whether the entry team was in the Cosby residence when he fired upon Cosby; this evidence would make his use of deadly force unreasonable. Officer Belker indicated in his deposition that he believed the officers were inside the house based on sounds of their entry and timing; however, he admits he never saw any officer in danger when he shot Cosby. Plaintiffs also presented the declaration of Cosby's neighbor, Gill, in which she stated that the first noise she heard was a gunshot, not the police ramming the Cosby front door. See Gill Dec. at 1. In light of the evidence presented by the plaintiffs, the court cannot determine that Officer Belker's action was reasonable in light of all the circumstances.

    3.  Governmental Interest

Graham articulates several factors to consider when determining the objective reasonableness of the use of deadly force: (1) the severity of the crime at issue; (2) whether the seized individual poses an immediate threat to the officer or others; and (3) whether the seized individual is attempting to escape or resist arrest. 490 U.S. at 396. When applying these factors to this case, the court cannot rule out the possibility that the officer acted unreasonably. The first factor--the underlying crime--was credit card fraud, a clearly non-violent crime. More

importantly, Cosby was not himself a suspect in any crime. The third factor--whether Cosby was attempting to flee or resist--also clearly weighs against the use of force here. Cosby was in his own home, likely unaware that police were even present. He was legally in possession of a firearm registered to him, and the court may infer that he was carrying the weapon to protect his home and himself from intruders. The second factor is where the heart of the controversy lies in this case: whether or not Cosby posed a threat to Officer Belker or to others. As noted above, plaintiffs have provided sufficient evidence to preclude summary judgment on this issue.

    4.  Availability of Alternative Means

While the Ninth Circuit held in Scott that an officer is not required to use the least intrusive means--he is only required to act reasonably--Graham employs the totality of the circumstances approach, allowing the fact finder to view all the circumstances in deciding whether the application of deadly force was reasonable in the given circumstances. See Graham, 490 U.S. at 396. Thus, when determining reasonableness, in addition to looking at the three factors articulated in Graham, the fact finder may consider the less devastating alternatives immediately available to the officer in its consideration of the totality of the circumstances. See Chew v. Gates, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994), cert. denied sub nom., City of Los Angeles v. Chew, 513 U.S. 1148 (1995). Here, plaintiffs have presented evidence that non-deadly means of handling the situation were available and, in fact, would have been more reasonable. For example, based on Officer Belker's deposition and declaration, plaintiffs contend that the officer could have kept himself concealed behind the fence and radioed the entry team officers, protecting both himself and Cosby from injury, instead of aiming his weapon at Cosby and opening himself up to threatening conduct.

Thus, based on the many genuine issues of material fact pertaining both the elements of a section 1983 claim and Officer Belker's possible defenses, summary judgment is denied with respect to plaintiffs' First Cause of Action.

  B.  Qualified Immunity

Defendants allege that summary judgment should be granted as to the First Cause of

9

1    Action because Officer Belker is entitled to qualified immunity. The defense of qualified
2    immunity protects "government officials . . . from liability for civil damages insofar as their
3    conduct does not violate clearly established statutory or constitutional rights of which a
4    reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[3] The
5    rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those
6    who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley
7    v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional
8    violation occurred, the [official] should prevail if the right asserted by the plaintiff was not
9    'clearly established' or the [official] could have reasonably believed that his particular conduct
10   was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).[4] Furthermore,
11   "[t]he entitlement is an immunity from suit rather than a mere defense to liability; . . . it is
12   effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S.
13   511, 526 (1985).

14       A defendant must allege qualified immunity as an affirmative defense. See Gomez v.
15   Toledo, 446 U.S. 635, 640 (1980). The qualified immunity test then becomes a two-part
16   inquiry: (1) Was the law governing the official's conduct clearly established? (2) Under that law,
17   could a reasonable official have believed his conduct was lawful? See Act Up!/Portland v.
18   Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993). The plaintiff bears the burden of proving the
19   existence of a "clearly established" right at the time of the allegedly impermissible conduct. See
20   Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). If the plaintiff meets this
21   burden, then the defendant bears the burden of establishing that his actions were reasonable,
22   even if he violated the plaintiff's constitutional rights. See Doe v. Petaluma City School Dist.,
23   54 F.3d 1447, 1450 (9th Cir. 1995); Maraziti, 953 F.2d at 523.[5]

24       In Fourth Amendment unreasonable force cases, unlike in other cases, the qualified
25   immunity inquiry is the same as the inquiry made on the merits. See Acosta v. City and County
26   of San Francisco, 83 F.3d 1143, 1147-48 (9th Cir. 1996). For example, an officer found to
27   have used unreasonable force will not be entitled to qualified immunity. See id. Because this

10

court found that there are genuine issues of material fact with regard to whether Officer Belker acted reasonably, summary judgment is inappropriate here.

II.    Defendants' Liability to Cosby's Parent, Child and Spouse

Defendants and plaintiffs differ on what standard applies to a Fourteenth Amendment claim when the deprivation was a result of a police officer's use of deadly force. Defendants claim they are entitled to summary judgment as to plaintiffs' Fourteenth Amendment claims because the actions of Officer Belker do not meet the "shocks the conscience" standard required under County of Sacramento v. Lewis, 530 U.S. 833, 118 S. Ct. 1708, 1711-12 (1998), and Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365 (9th Cir. 1998). Plaintiffs respond that Officer Belker's conduct amounts to "deliberate indifference" which they contend is the proper standard for evaluating Fourteenth Amendment violations such as this.

In Lewis, the Supreme Court held that a high speed police chase resulting in the death of the decedent did not subject the police to liability under the Fourteenth Amendment. 118 S. Ct. at 1721. While the Lewis plaintiffs alleged that police conduct showed a conscious disregard for the decedent's life, the Court held that this allegation did not rise to the level of culpability required under the Fourteenth Amendment. See id. Instead, the Court held that "only a purpose to cause harm unrelated to the legitimate object of the arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." The Court arrived at that standard by analyzing the degree of deliberation possible in a given situation. For example, when prison officials deny a prisoner medical care, this presents a situation where actual deliberation is possible, thus the lower "deliberate indifference" standard applies. On the other hand, during a prison riot or a high speed chase, actual deliberation is impractical, therefore the officers are held to the higher "shocks the conscience" standard. See id. at 1718. In Moreland, the Ninth Circuit applied the Lewis standard in a case arising out of an officer fatally shooting a bystander while police attempted to quell a gunfight. See Moreland, 159 F.3d at 368. Moreland's application of the Lewis standard abrogated the holding on which plaintiffs

11

1 rely: Byrd v. Guess, 137 F.3d 1126 (9th Cir.), cert. denied sub nom., Byrd v. Cantu, 119 S. Ct.
2 405 (1998). See Moreland, 159 F.3d at 372-73. Consequently, this court finds the new
3 standard set forth in Lewis and in Moreland applicable here. While the plaintiffs allege facts
4 sufficient to support a claim that Cosby's killing "shocks the conscience" the complaint asserts
5 only that Officer Belker acted with "deliberate indifference." Because plaintiffs filed the lawsuit
6 prior to the Lewis and Moreland decisions, the court deems the complaint amended to allege the
7 proper "shocks the conscience" standard as required by Lewis. Thus, recovery under the
8 Fourteenth Amendment is not barred.

10  III.   Wrongful Death Causes of Action
11         Defendants contend that summary judgment should be granted as to plaintiffs' Third,
12 Fourth and Fifth Causes of Action because under California tort law, Officer Belker was
13 justified in shooting Cosby. Under California Penal Code section 196, a homicide is justifiable if
14 the circumstances "reasonably create[d] a fear of death of serious bodily harm to the officer or
15 to another." See Martinez v. County of Los Angeles, 47 Cal. App. 4th 334, 349 (1996) (citing
16 Kortum v. Alkire, 69 Cal. App. 3d 325, 222 (1977)). The California Court of Appeal chose to
17 apply the same standard for determining reasonableness as the one used by federal courts in
18 section 1983 claims; thus plaintiff bears the same burden of demonstrating that the officer did
19 not act reasonably under the totality of the circumstances. See Edson v. City of Anaheim, 63
20 Cal. App. 4th 1269, 1274 (1998). Since the court has already determined there is a genuine
21 issue of material fact regarding the reasonableness of Officer Belker's actions, summary
22 judgment on plaintiff's Third, Fourth and Fifth Causes of Action must also be denied.

24  IV.   Injunctive Relief
25         Defendants contend that plaintiffs are unable to meet the criteria for injunctive relief
26 because they cannot show a likelihood of success on the merits. While the court rejects
27 defedants' argument, the crucial issue in this case is whether plaintiffs can establish a "pattern or

12

practice" of wrongful treatment warranting an injunction here. The Supreme Court addressed injunctive relief under similar circumstances in City of Los Angeles v. Lyons, 461 U.S. 95 (1983), in which the plaintiff, Lyons, sought damages and injunctive relief against the police for use of excessive force in subjecting him to an injurious chokehold. The Court held that, although Lyons had once been victim to the city's chokehold policy, he must show that there was a sufficient likelihood that he would be stopped again and subjected to the unlawful use of a chokehold. See id. at 105-06. Even though Lyons' claim alleged that the city authorized the use of such chokeholds in certain instances, Lyons failed to indicate why he would be realistically threatened in the future by officers wrongly applying the chokehold. See id. at 106.

Applying Lyons, the Ninth Circuit has found in several cases that plaintiffs have sufficiently met the requirement of proving threat of immediate injury when they have produced evidence of a pattern or practice. See Hodgers-Durgin v. Vina, 165 F.3d 667, 674 (9th Cir. 1999) (plaintiffs evidence that Border Patrol's pattern and practice of stopping persons without reasonable suspicion supported the conclusion that a routine journey on local highways past a Border Patrol produced a credible threat of future injury); Gonzales v. City of Peoria, 722 F.2d 468, 481 (9th Cir. 1983) (evidence that police consistently apply city policy that results in discrimination against residents of Mexican descent demonstrates sufficient future threat of future constitutional violations).

Here, due to the court's decision to hold the plaintiffs' Second Cause of Action in abeyance pending resolution of Officer Belker's liability, no significant discovery has taken place with regard to the issue of "pattern or practice." Thus, plaintiffs have not had the opportunity to compile comprehensive evidence of the kind used in Gonzales and Hodgers-Durgin. The court, therefore, will hold plaintiffs' Sixth Cause of Action in abeyance pending the determination of Officer Belker's liability, and summary judgment as to plaintiffs' Sixth Cause of Action is denied.

/////

/////

13

## CONCLUSION

For the foregoing reasons, the court hereby DENIES defendants City of Oakland, Samuels, Kocian, and Belker's Motion for Summary Judgment with respect to plaintiffs' First, Third, Fourth and Fifth and Sixth Causes of Action. The court will hold plaintiffs' Sixth Cause of Action in abeyance pending a finding of liability with respect to Officer Belker's actions.

This order fully adjudicates the motion reflected at Docket # 48, and the Clerk of the Court shall remove it from the pending motions list and close the file.

IT IS SO ORDERED.

Dated: 4/28/99

MARILYN HALL PATEL
Chief Judge
United States District Court
Northern District of California

14

## ENDNOTES

1. Pursuant to this court's order, plainitffs' Second Cause of Action, a section 1983 claim against Oakland and city officials for perpetuating a policy that resulted in Cosby's death, will remain in abeyance pending a finding of liability with respect to Officer Belker's actions. Thus, plaintiffs' Second Cause of Action is not at issue in this motion.

2. All facts are taken from the parties' Joint Statement of Undisputed Facts unless otherwise noted.

3. Qualified immunity is therefore limited to actions for damages against a government official in his individual capacity; it is not available to a government entity when an official is sued in his official capacity, see Brandon v. Holt, 469 U.S. 464, 472-73 (1985); Owen v. City of Independence, 445 U.S. 622, 651 (1980), nor is it available when the only relief sought is injunctive, see American Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991).

4. The breach of a statute or regulation therefore is largely irrelevant to whether a defendant is entitled to qualified immunity. See Davis v. Scherer, 468 U.S. 183, 193-194 (1984); Kelley v. Borg, 60 F.3d 664, 666 (9th Cir. 1995) ("[T]he threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established. The right itself is the matter of discussion, not whether that right was in fact violated."); see also Olagues v. Russoniello, 770 F.2d 791, 805 (9th Cir. 1985); Velasquez v. Senko, 643 F. Supp. 1172, 1175-79 (N.D. Cal. 1986).

5. A defendant will not be entitled to qualified immunity if he was plainly incompetent or knowingly violated the law. See Burns v. Reed, 500 U.S. at 494-95. See, e.g., Harris v. Roderick, 126 F.3d 1189, 1196-97 (9th Cir. 1997) (official who does not personally cause constitutional injury but sets in motion chain of events that causes such injury may not be shielded by qualified immunity if he knows or reasonably should know that his actions will cause others to inflict constitutional injury).

awb

```
            United States District Court
                       for the
             Northern District of California
                    April 29, 1999
```

** CERTIFICATE OF SERVICE **

Case Number:3:97-cv-00267

Cosby

vs

City of Oakland

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 29, 1999, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

```
    Wayne Johnson, Esq.                    AB/MHP
    Law Offices of Wayne Johnson
    440 Grand Ave Ste 300
    Oakland, CA  94610

    Karen A. Rodrigue, Esq.
    Office of the City Attorney
    City Hall
    One Frank Ogawa Plaza
    6th Flr
    Oakland, CA  94612

    Howard Moore Jr., Esq.
    Moore & Moore
    445 Bellevue Ave 2nd Flr
    Oakland, CA  94610-4924
```

Richard W. Wieking, Clerk

BY: _____
A Bowser, Deputy Clerk